**WILSON CONTRACTING CO., Inc.**

v.

**The STATE of Delaware et al.**

**STATE of Delaware**

v.

**WILSON CONTRACTING CO., Inc., et al.**

Superior Court of Delaware.

New Castle.

Oct. 7, 1965.

Samuel Russell, of Bayard, Brill, Russell & Handelman, Wilmington, S. Samuel Arsht, David Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for the State.

C. Edward Duffy and Murray Schwartz, Wilmington, for Wilson Contracting Co., Inc.

OPINION

CHRISTIE, Judge.

Wilson Contracting Co. (Wilson) brought suit on May 22, 1963, in Civil Action No. 248. The State of Delaware (State) commenced its action, Civil Action No. 423, on August 30, 1963. The counterclaims by Wilson in that latter action were nearly identical with its main claims in Civil Action No. 248 and on May 12, 1964, the cases were consolidated. Cross motions for summary judgment have been filed.

The claims and counterclaims have several points in common with those made in State of Delaware v. T. Paul Dabson and State of Delaware v. George & Lynch, Inc., which were resolved by decision of this Court on July 1, 1965; affirmed, 217 A.2d

497 (1966). Those cases also emanated from disputes under construction contracts with the State Highway Department (Department) and were also performed under the Department's Standard Specifications of April 1, 1957. That decision is determinative of the motions for summary judgment herein made although some of it is inapplicable here.

Five contracts are involved in this case. As to Contract 920, the State contends that Wilson was paid $3.00 per cubic yard for 5,454 cubic yards of muck excavation when the unit price for excavation, including within it muck excavation, was $0.50 per cubic yard and therefore, Wilson was improperly, illegally, or mistakenly overpaid the sum of $13,636.00. Similarly, in Contract 1163, the State claims (under amendment of January 13, 1965) that Wilson was overpaid $19,397.00, $16,542.00 being attributable to a $1.50 per cubic yard increase in the unit price applicable to select borrow used for the backfilling of utility trenches, and $2,845.00 being attributable to the use of 813 cubic yards of select borrow at $3.50 per cubic yard which was neither authorized nor required. As to Contract 1224(6), the State contends that Wilson was to be paid a set figure of $19,000 for 9,500 cubic yards of select borrow at $2.00 per cubic yard but was instead paid $22,208.12 for 11,104.06 cubic yards, an overpayment of $3,208.12. Finally, under Contract 1324, the State contends that Wilson is responsible for 199 days of liquidated damages at $165.00 per calendar day or $32,835.00 for a 199 day delay in completion beyond any extension date given by the State.

Wilson's defenses as to these claims are similar to those presented by T. Paul Dabson and George & Lynch in the companion case, namely express approval, acceptance of work without contemporaneous complaint, estoppel and release. The State's contentions in this case are similar to those advanced in the earlier cases and the facts being substantially parallel, the decision of July 1, 1965 is dispositive of the claims.

Wilson's motion for summary judgment as to the State's claims is therefore granted.

Wilson's claims for damages are made as to Contracts 920, 1324 and 1378 and consist basically of allegations that substantial damage was caused by the State's alleged failure to acquire all rights of way and rights of entry and to relocate all utilities so as not to interfere with the orderly process of road construction. Wilson also alleges that the Department's failure to obtain working easements, to make swift decisions when unforeseen obstacles were encountered and to provide adequate plans or engineering work were breaches under the contracts and caused delay, idling of equipment and additional work, and Wilson demands therefore $130,000 in damages. (There is a motion pending to amend the complaint so as to claim damages of $875,000.)

There are two significant differences between Wilson's claim and those advanced in the Dabson case. The first is that Wilson unlike the other contractors has not accepted final payment under any of the three contracts on which it bases its claims. This means that Standard Specification 75 containing a provision for the express release of the State and its agents upon acceptance of final payment by the contractor is not applicable to and does not bar any claims under these three contracts.

This, however, does not change the result. As stated in the July 1, 1965 decision at p. 11:

> "The binding effect of the Chief Engineer's decisions is sufficient to determine the motions for summary judgment. However, because of the complexity of the separate disputes, some of which are less clearly within the Chief Engineer's authority than others and none of which are discussed in particular detail, I will mention additional reasons why the claims and counterclaims must be denied." (Emphasis added.)

All the issues presented by Wilson's allegations in its suit against the State were

passed upon and disposed of directly or indirectly by the Chief Engineer.

A second major difference between Wilson's claims and those heretofore considered is that Wilson does not limit its claims and counterclaims to a demand for compensation for work it had done, but for which it had never been paid. Instead, its primary reliance is on incidental but allegedly substantial damages caused by the idling of men and equipment and the consequences of inability to proceed in an orderly fashion with construction.

This difference does not change the result. Wilson pursued its remedies under the terms of the contract and presented its grievances to the Chief Engineer of the Department and to the Department itself, and its grievances were reviewed and rejected or compromised. While the detailed procedures of a decision-making administrative agency may not always have been exactly followed, it is clear that grievances were submitted to appropriate officials of the Department (always including the Chief Engineer) and these grievances were reviewed and resolved by these officials in accord with the intent of the Standard Specifications that such disputes be resolved quickly and without causing delays in construction.

 The decisions of the Chief Engineer when acting as referee or arbiter, or to the extent that he acted as a referee or arbiter, under Standard Specification 27 are final and binding in the absence of fraud.[1] The decisions were made within the scope of the Chief Engineer's authority under the contract and so long as the decisions made were not arbitrary, capricious, fraudulent or so grossly erroneous or partial as to impeach the arbitrator's good faith and constitute constructive fraud, they are final. An exercise of honest judgment is all that is required, and this is true even though the

referee or arbitrator is within the employ of one of the parties, as this fact was clearly known at the time of selection and the parties are bound by their agreement. See United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950); Southern New England R. Corp. v. Marsch, 45 F.2d 766 (1st Cir.1931); Mundy v. Louisville & N. R. Co., 67 Fed. 6 (6th Cir.1895); Anthony P. Miller, Inc. v. Wilmington Housing Authority, 179 F.Supp. 199 (D.Del.1959); M. De Matteo Constr. Co. v. Maine Turnpike Authority, 184 F.Supp. 907 (D.Me. 1960); Crumlish v. Wilmington & Western R. Co., 5 Del.Ch. 270 (Ch.Ct.1879); Kerr v. State, 127 Me. 142, 142 A. 197 (1928).

For these reasons, Wilson's motion for summary judgment as to the State's claims is granted and the State's motion for summary judgment as to Wilson's claims and counterclaims is granted.

As their principal has no liability, the motions to dismiss entered by the sureties are granted.

Order in accord with opinion.

---

1. It should be noted that Wilson filed on August 20, 1965, a motion for leave to amend the complaint in Civil Action No. 248, 1963 in which it alleges fraud. This motion is not considered at this time.