KUHN CONSTRUCTION, INC.,
Plaintiff Below, Appellant,

v.

DIAMOND STATE PORT CORPORA-
TION and Eugene Bailey, in his ca-
pacity as Executive Director of the
Diamond State Port Corporation, De-
fendant Below, Appellees.

No. 124, 2009.

Supreme Court of Delaware.

Submitted: Dec. 9, 2009.

Decided: March 8, 2010.

James S. Green, Sr., Seitz Van Ogtrop & Green, P.A., Wilmington, DE; Paul A. Logan (argued), Powell, Trachtman, Logan, Carrle & Lombardo, P.C., King of Prussia, PA, pro hac vice for appellant.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, for appellee, Diamond State Port Corporation.

Frederick H. Schranck, Department of Justice, Dover, DE, for amicus curiae the Delaware Department of Transportation.

Anthony G. Flynn and William E. Gamgort, Young Conaway Stargatt & Taylor LLP, Wilmington, DE, for amicus curiae the Delaware Contractors Association.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the court en banc.

STEELE, Chief Justice:

Kuhn Construction Company submitted the lowest bid to reconstruct a wharf for Diamond State Port Corporation, but later disputed construction and engineering plans. When DSPC's executive director asserted that their contract's referee clause allowed him to arbitrate disputes between the parties, Kuhn sued to enjoin arbitration. The Vice Chancellor granted DSPC's motions to dismiss and compel arbitration. Because the referee clause on these facts do not clearly require arbitration and Kuhn may litigate its claims, we reverse the judgment of the Court of Chancery.

## FACTS AND PROCEDURAL HISTORY

### 1. DSPC solicits Kuhn's bid and the parties sign a contract.

DSPC, a corporate entity of the State of Delaware, owns and operates the Port of Wilmington. DSPC drafted a contract, and solicited fixed price bids to reconstruct a wharf at the Port of Wilmington. On March 29, 2007, Kuhn submitted the lowest bid, and DSPC awarded Kuhn the contract. The referee clause, § 7.2.1 of the contract between DSPC and Kuhn, provides that

> The Director, or his designee, shall act as referee in all questions arising under the terms of the Contract between the parties hereto, and the Decision of the Director shall be final and binding. On all questions concerning the interpretation of Plans and Specifications, the acceptability, quality and quantity of materials or machinery furnished and work

performed, the classification of material, the execution of the work and the determination of payment due or to become due, the decision of the Director, or his designee, shall be final and binding.

While the contract does not define 'questions,' as used in the referee clause, it does define 'claims:'

A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

The Contract also contains a number of standardized forms including Association for International Arbitration (AIA) Form 201. Contractors routinely use AIA Form 201, which sets out the rights of parties in arbitration. DSPC initially included this form in § 4.6, but struck it, along with other substantive arbitration provisions. Article 3 of the contract provides that for any action or proceeding arising out of the project, the parties consent to suit in either Delaware's state courts or federal court in Delaware.

## 2. *Construction begins and disputes arise.*

Kuhn began construction and, in July 2007, requested guidance from DSPC to resolve numerous problems. DSPC failed to respond adequately to these requests and, on March 14, 2008, Kuhn started invoicing DSPC for additional work that it undertook to complete the project. DSPC summarily rejected Kuhn's billing and, on November 8, 2008, DSPC's executive director attempted to institute a multi-party hearing to consider Kuhn's complaints and assess fault among Kuhn and other contracting parties.

The executive director asserted the authority to call the meeting under the referee clause. Kuhn immediately objected, claiming that the executive director does not have authority to arbitrate claims under the referee clause or the Delaware Uniform Arbitration Act. Kuhn refused to participate in any arbitration proceeding. Kuhn asserted that the referee clause only governs day-to-day dispute resolution issues, and that neither Kuhn nor DSPC initially intended the referee clause to act as a form of arbitration provision.

DSPC then sent Kuhn a notice of its intent to arbitrate and a demand for arbitration. Kuhn responded by filing a complaint for injunctive relief, pursuant to 10 *Del. C.* § 5703(b). On January 14, 2009, DSPC filed motions to compel arbitration and to dismiss, pursuant to Court of Chancery Rule 12(b)(6).

After oral argument on February 9, 2009, DSPC agreed to withdraw the multiparty proceeding and proceed with arbitration solely with Kuhn. The Vice Chancellor held that the referee clause present in the dispute arising in *Ruckman and Hansen, Inc. v. Delaware River and Bay Authority,*[1] was almost identical to DSPC's referee clause, therefore, and that *Ruckman* controlled Kuhn and DSPC's dispute. He then granted DSPC's motions to compel arbitration and to dismiss. Kuhn appeals from the order granting those motions.

1. 244 A.2d 277 (Del.1968).

## STANDARD OF REVIEW

We review the dismissal of a complaint pursuant to Court of Chancery Rule 12(b)(6) *de novo*.[2] When reviewing the denial of a motion to dismiss, we must view the complaint in the light most favorable to the plaintiff.[3] A trial judge should dismiss a complaint "if the defendants' interpretation is the *only* reasonable construction as a matter of law."[4] We review all other questions of law including contract interpretation *de novo*.[5]

## DISCUSSION

The public policy of Delaware favors arbitration.[6] Delaware has a long history of favoring arbitration where the State enters into contracts with outside parties.[7] The State often requires the contracting party to allow the State's agent to act as the arbiter in connection with any problems that arise during performance of the contract.[8] This inherent conflict of interest creates the perception—if not the reality—of unfairness and injustice. When sophisticated parties enter into agreements, we grant them the power to bargain away their right to an impartial arbiter. However, the contract must reflect that the parties clearly and intentionally bargained for whether and how to arbitrate.[9]

We will not enforce a contract that unclearly or ambiguously reflects the intention to arbitrate. "Ambiguity exists 'when the provisions in controversy are reasonably or fairly susceptible to different interpretations.'"[10] A trial judge must review a contract for ambiguity through the lens of "what a reasonable person in the position of the parties would have thought the contract meant."[11] We will read a contract as a whole and we will give each

**2.** *VLIW Technology, LLC v. Hewlett–Packard Co.*, 840 A.2d 606 (Del.2003).

**3.** *Gantler v. Stephens*, 965 A.2d 695, 703 (Del. 2009) ("In reviewing the grant or denial of a motion to dismiss, we view the complaint in the light most favorable to the non-moving party, accepting as true its well-pled allegations and drawing all reasonable inferences that logically flow from those allegations.").

**4.** *Vanderbilt Income and Growth Assoc., LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del.1996).

**5.** *AT&T Corp. v. Lillis*, 953 A.2d 241, 251 (Del.2008).

**6.** *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del.1998).

**7.** *See Wilson Contracting Co. v. State*, 243 A.2d 65 (Del.Super.1965), *aff'd* 224 A.2d 396 (Del. 1966).

**8.** *See Ruckman and Hansen, Inc. v. Delaware River and Bay Authority*, 244 A.2d 277 (Del. 1968); *Wilson Contracting Co. v. State*, 243 A.2d 65 (Del.Super.1965), *aff'd* 224 A.2d 396 (Del.1966).

**9.** *DMS Properties–First, Inc. v. P.W. Scott Associates, Inc.*, 748 A.2d 389, 391 (Del.2000) ("A party cannot be forced to arbitrate the merits of a dispute, however, in the absence of a clear expression of such intent in a valid agreement.").

**10.** *Vanderbilt Income and Growth Assoc., LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del.1996) (quoting *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (Del. 1996)); *Liquor Exch., Inc. v. Tsaganos*, 2004 WL 2694912, at *2 (Del.Ch. Nov. 16, 2004) (holding that when contract terms are "fairly susceptible [to] different interpretations they are considered ambiguous").

**11.** *Rhone–Poulenc Basic Chem. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1197 (Del.1992); *see also NBC Universal v. Paxson Comm'cns*, 2005 WL 1038997, at *5 (Del.Ch. Apr. 29, 2005) ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party.").

provision and term effect, so as not to render any part of the contract mere surplusage.[12] If we find ambiguity, we will apply the doctrine of *contra proferentem* and construe ambiguous terms and provisions against the drafting party.[13]

 Here, the terms in the referee clause did not clearly and unambiguously indicate the intention to arbitrate and, therefore, did not place Kuhn on adequate notice that DSPC, the drafting party, intended to arbitrate all disputes pursuant to the referee clause. Kuhn could have just as easily read the referee clause as a day-to-day dispute resolution clause, commonly found in construction contracts. Although isolated terms and provisions of the contract support DSPC's contractual interpretation, the contract as a whole also supports Kuhn's interpretation. The referee clause does not contain the word 'arbitrate,' the referee clause only refers to 'questions'—not 'claims'—which the contract uses as a term of art, and DSPC struck most of the arbitration provisions contained in § 4.6 of the bid document. We do not require the magic word, 'arbitration,' to find that parties intended to arbitrate,[14] but DSPC's failure to include the express term (having struck the arbitration clause common in the industry), coupled with other ambiguities, could lead Kuhn reasonably to conclude that DSPC had elected to forego arbitration of claims.

Article 3, which provides that Kuhn must file all actions and proceedings within the Delaware state or federal court system within Delaware, buttresses Kuhn's interpretation of the contract. If DSPC intended its own arbiter to resolve *all* disputes arising from the contract under the referee clause, then the reference to Delaware courts in Article 3 either means nothing or misleads. Because Kuhn's interpretation of the contract is as reasonable as DSPC's, the Vice Chancellor erred by dismissing Kuhn's complaint and ordering arbitration.

The Vice Chancellor also erred by relying on *Ruckman*[15] for the proposition that the use of the same referee clause, here, as in *Ruckman* unequivocally serves as an arbitration clause, with the State's employee acting as an "impartial" arbitrator or referee. The Vice Chancellor held that because the *Ruckman* arbitration provision closely matched § 7.2.1, our holding in *Ruckman* bound him. In *Ruckman*, however, the parties did not litigate, nor did we consider, whether that language constituted an arbitration provision.[16] The dispute in *Ruckman* concerned only whether the issue in dispute was subject to arbitration—the parties did not dispute that the referee clause acted as an arbitration provision and they mutually agreed to arbitrate their claims under that clause. The parties in *Ruckman* agreed to arbitrate at the outset and no one contested that the referee clause would constitute the basis for arbitration.

Accordingly, *Ruckman* neither controls nor guides the resolution of the instant dispute. To the contrary, DSPC unilaterally deleted the arbitration clause from the

12. *Energy Partners, Ltd. v. Stone Energy Corp.,* 2006 WL 2947483, at *13 (Del.Ch. Oct 11, 2006).

13. *Penn Mut. Life Ins. Co. v. Oglesby,* 695 A.2d 1146, 1151 (Del.1997).

14. *See Joseph F. Trionfo & Sons, Inc. v. Ernest B. LaRosa & Sons, Inc.,* 38 Md.App. 598, 381 A.2d 727, 731 (Ct.Spec.App.1978).

15. *Ruckman and Hansen, Inc. v. Delaware River and Bay Authority,* 244 A.2d 277 (Del. 1968).

16. *Id.*

bid document, preventing negotiations over any intent to arbitrate before Kuhn submitted a bid. The parties could not have objectively manifested their intention to arbitrate or litigate because DSPC obviated the opportunity to discuss any contract arbitration provision. Therefore, the "referee" clause does not compel arbitration. The parties may litigate their current contract dispute.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Court of Chancery granting DSPC's motions to compel arbitration and to dismiss the complaint.