STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11-30,
AMH - CUM - 11/17/2011

CORDJIA, LLC

    Plaintiff,

 v.

ATHENAHEALTH, INC.,

    Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Defendant athenahealth, Inc. (Athena) moves to dismiss, pursuant to M.R. Civ. P. 12(b)(3) and M.R. Civ. P. 12(b)(6), the eight-count complaint against it filed by Plaintiff Cordjia, LLC (Cordjia) based on a forum selection clause within a Non-Disclosure Agreement (NDA) between the parties. The parties agree that the forum selection clause is enforceable and that the laws of Delaware govern the court's analysis of the application and scope of the forum selection clause to the present dispute. They disagree, however, about whether all of Cordjia's claims are governed by the NDA and therefore are subject to the forum selection clause. The court heard argument in chambers on this motion on November 1, 2011.

To the extent Cordjia's claims are based on the NDA, Athena's motion is granted. However, to the extent Cordjia asserts that Athena is liable for breach of partnership obligations alleged to have arisen after and independently of the NDA, Athena's motion is denied. As to the latter claims, Cordjia will nonetheless be required to file an amended complaint that does not rely on the NDA.

1

# FACTUAL BACKGROUND

The following recitation of facts is drawn from Cordjia's complaint:

Cordjia is a limited liability company organized under the laws of Delaware; Athena is a corporation organized under the laws of Delaware. (Compl. ¶¶ 1-2.) Point Lookout Resort and Conference Center (Point Lookout) is a resort a conference center in Lincolnville, Maine that was originally developed by MBNA America as a private executive conference facility. (Compl. ¶ 5.) Bank of America acquired Point Lookout in 2006 and later sold it to The Erickson Foundation in 2007. (Compl. ¶ 6.) All of Cordjia's managing members had been senior executives at MBNA America and had been involved in the original development of Point Lookout. (Compl. ¶¶ 7-8.) Athena became a client of Cordjia in February 2010. (Compl. ¶ 10.)

Cordjia entered into negotiations to purchase Point Lookout in March 2010, but stepped away from the transaction in May 2010. (Compl. ¶ 9.) In September 2010, Athena contacted Cordjia to begin discussing the possibility of the two companies working together to acquire and operated Point Lookout. (Compl. ¶ 11.) At a meeting held at Athena's office in Belfast, Maine, Athena's chairman told Cordjia that Athena would like to partner with Cordjia to jointly acquire Lookout Point. (Compl. ¶ 12.) The parties had general discussions about their potential joint acquisition of Point Lookout and the proposed venture's structure for several weeks. (Compl. ¶ 13.) When Cordjia did not want to share its detailed information and insights regarding Point Lookout with Athena unless Athena was committed to pursuing a transaction with Cordjia, the parties entered into a Mutual Non-Disclosure Agreement (NDA) on December 13, 2010. (Compl. ¶¶ 14-15; NDA at 1.) Athena assured Cordjia they fully intended to pursue a partnership with Cordjia to acquire Point Lookout. (Compl. ¶ 15.)

2

The NDA, a copy of which is attached to the motion to dismiss,[1] is directed toward opportunities related to Point Lookout and the exchange of Confidential Information, a defined term, between the parties to that end. (NDA at 1.) The NDA defines confidential information very broadly, including trade secrets, know-how, business plans, marketing plans, etc., provided on or after the date of the NDA. (NDA at 1.) With regards to confidential information, the parties agreed:

> Neither party nor any of its directors, officers, agents, employees, advisors, financing sources, affiliates, and agents (collectively those who receive Confidential Information and are acting on the Recipient's behalf "Representatives") will use or permit to be used the Owner's Confidential Information for his, her, their or its own purposes or otherwise, except in connection with the evaluation, negotiation, and if applicable, consummation of a transaction between Cordjia and athena, and in a manner not in violation of this Agreement.

(NDA § 1(a).) The parties also included a choice of law and forum selection clause:

> This agreement shall be governed by the laws of the State of Delaware (without regard to its principles of conflict of laws) and any disputes hereunder shall (if not resolved in good faith by the parities [sic]) be resolved in a court of competent jurisdiction in the State of Delaware, sitting in the City of Wilmington, New Castle County.

(NDA § 2.)

During December and January, Cordjia shared with Athena confidential information and proprietary information that Cordjia had developed and prepared regarding Point Lookout and its plans to acquire, operate, and reposition the resort, including architectural and engineering analysis, financial forecasts, operating models, asset assessments, project and cost management studies, facilities planning analyses, and feasibility studies. (Compl. ¶ 16.)

---

[1] "[O]fficial public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43, 48.

[2] The parties agree that this count is governed by the forum selection clause and should be dismissed. (M. Dismiss 5; Opp'n M. Dismiss 1.)

[4] Other Superior Court decisions have not agreed on the appropriate procedural mechanism for addressing a forum selection clause. *Compare Bee Load Ltd. v. BBC Worldwide Ltd.*, 2006 Me. Super. LEXIS 102, at *9-*10 (May 15, 2006) (Humphrey, J.) (analyzing a forum selection clause pursuant to M.R. Civ. P. 12(b)(3), but noting

The parties' representatives spent the next several weeks negotiating a purchase strategy and the financial terms of the partnership, which culminated in a proposal dated January 22, 2011, that Cordjia accepted, subject to approval by Athena's Board of Directors. (Compl. ¶ 17.) Pursuant to the parties' understanding, Cordjia began negotiating on behalf of the partnership with Point Lookout's broker and kept Athena apprised of the negotiations. (Compl. ¶¶ 18-20.) Athena's Board formally approved the partnership on February 16, 2011, and Cordjia began forwarding due diligence information to Athena. (Compl. ¶ 21.) A week later, on February 24, 2011, Athena informed Cordjia that it had decided to part company with Cordjia and to pursue acquisition of Point Lookout on its own. (Compl. ¶ 22.) Athena ultimately purchased Point Lookout in a transaction that closed on June 23, 2011. (Compl. ¶ 23.)

Cordjia initiated this litigation on July 19, 2011, in Waldo County Superior Court by filing an eight-count complaint against Athena that alleged: fraud (Count I); negligent misrepresentation (Count II); breach of fiduciary duty (Count III); unjust enrichment (Count IV); quantum meruit (Count V); promissory estoppel (Count VI); breach of contract, i.e. the NDA (Count VII)[2]; and violations of Maine's adoption of the Uniform Trade Secrets Act, 10 M.R.S. §§ 1541-48 (2010) (Count VIII). Athena filed its motion to dismiss the complaint on August 8, 2011, along with a motion for protective order to stay discovery pending the outcome on the motion to dismiss. The case was accepted for transfer to the Business and Consumer Court on September 14, 2011.

---

[2] The parties agree that this count is governed by the forum selection clause and should be dismissed. (M. Dismiss 5; Opp'n M. Dismiss 1.)

4

## DISCUSSION

### I.    Standard of Review

Athena correctly notes that there has been no determination by the Law Court on what rule of procedure governs a motion to dismiss brought pursuant to a forum selection clause in a contract. (M. Dismiss 4.) Athena and Cordjia suggest that the court should view the motion under the rubric of M.R. Civ. P. 12(b)(3), as opposed to M.R. Civ. P. 12(b)(6).

A Rule 12(b)(3) motion attacks the propriety of venue, and upon good cause or in the interests of justice, the remedy for improper venue within the state is transfer to the county where venue is proper. *See* 14 M.R.S. § 508 (2010). Athena asserts no county within the state where venue would be proper. The gravamen of Athena's motion is that the Superior Court has no jurisdiction over the case because of the parties' forum selection clause, and thus is more properly considered as a motion to dismiss for failure to state a claim upon which relief can be granted.[4] *See* M.R. Civ. P. 12(b)(6).

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). When reviewing a motion to dismiss, this court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* Further, the court may consider documents central to the plaintiff's claim, such as a contract in a breach of contract case, when evaluating the motion to dismiss without converting

---

[4] Other Superior Court decisions have not agreed on the appropriate procedural mechanism for addressing a forum selection clause. *Compare Bee Load Ltd. v. BBC Worldwide Ltd.*, 2006 Me. Super. LEXIS 102, at *9-*10 (May 15, 2006) (Humphrey, J.) (analyzing a forum selection clause pursuant to M.R. Civ. P. 12(b)(3), but noting the outcome would be the same under M.R. Civ. P. 12(b)(6)), *with Clean Harbors Envtl. Servs., Inc. v. James*, 2006 Me. Super. LEXIS 263, at *5-*6 (Dec. 12, 2006) (Cole, J.) (analyzing a motion to dismiss based on a forum selection clause under a 12(b)(6) rubric).

the motion into a motion for summary judgment. *See Moody v. State Liquor & Lottery Comm'n,* 2004 ME 20, ¶ 11, 843 A.2d 43, 48. In the context of a party seeking dismissal based on a forum selection clause, the motion should be granted if it appears that the plaintiff would not be entitled to any relief in Maine courts "under any set of facts that he might prove in support of his claim." *See Shaw,* 683 A.2d at 503 (quotation marks omitted).

II.     Forum Selection Clause and Choice of Laws Provision

The parties agree that the breach of contract claim (Count VII) is plainly governed by the NDA and should be dismissed here and pursued, if at all, in the Delaware courts. The parties also agree that the forum selection clause is enforceable[5] and that Delaware law applies to determine the scope of the forum selection clause within the NDA. The parties dispute the scope of the forum selection clause, and thus the scope of the agreement.[6]

Athena argues that all of Cordjia's claims involve the same operative facts: "Athena led Cordjia to believe it was going to pursue a partnership with it, induced Cordjia to provide it with valuable confidential information, and then abandoned the alleged partnership." (M. Dismiss 8.) As such, Athena argues that because the remaining claims are inextricably

---

[5] "Delaware courts afford a great deal of respect to a plaintiff's choice of forum, and this respect should be even more stalwart where both parties have agreed in advance to a forum by contractual provision." *Aveta, Inc. v. Colon,* 942 A.2d 603, 607 (Del. Ch. 2008).

> Such an agreement is only unreasonable when its enforcement would seriously impair the Plaintiff's ability to pursue its cause of action. Mere inconvenience or additional expense is not the test of unreasonableness. In light of present day commercial realities, a forum clause should control absent a strong showing that it should be set aside.

*HealthTrio, Inc. v. Margules,* C.A. No. 06C-04-196, 2007 Del. Super. LEXIS 34, at *10 (Del. Super. Ct. Jan. 16, 2007) (quotation marks omitted). Neither party challenges the enforceability of the forum selection clause or argues that the agreement should be set aside.

[6] The parties dispute the applicable law the court should be applying, both citing to Delaware state cases and cases from the Third Circuit Court of Appeals. Delaware courts, however, routinely hold that "[w]hen a contract contains a forum selection clause, [the] court will interpret the forum selection clause in accordance with the law chosen to govern the contract." *See Ashall Homes Ltd. v. ROK Entm't Grp., Inc.,* 992 A.2d 1239, 1245 (Del. Ch. 2010). Because the parties have designated Delaware as both the forum and as their choice of law, the court analyzes the parties' claims pursuant to Delaware law, utilizing federal law only to illustrate other examples.

intertwined with the NDA and the breach of contract claims, they must be dismissed. (M. Dismiss 8; Reply 2-3.)

In response, Cordjia argues that its non-breach of contract claims fall outside the reach of the forum selection clause because of the clause's narrow scope: "any disputes hereunder." (NDA § 2; Opp'n M. Dismiss 3.) Cordjia argues that the forum clauses within each case cited by Athena are distinguishable because each is far broader than the present clause, containing such phrases as "any claim arising out of or related to" and "any action hereon or related hereto." (Opp'n M. Dismiss 3-4.)

A.    Delaware Law on Forum Selection Clauses

In Delaware, as in Maine, a contract is to be read as a whole, to "give each provision and term effect, so as not to render any party of the contract mere surplusage." *See Kuhn Constr. Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010); *accord McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me. 1996) ("A contract should be construed viewing it as a whole. An interpretation that would render any particular provision in the contract meaningless should be avoided." (citation omitted)). The issue is the scope of "any disputes hereunder" within the NDA and whether it encompasses only claims asserting a breach of the NDA, or more disputes between the parties. The Supreme Court of Delaware has not addressed the scope of a forum selection clause, but several trial court decisions have addressed the issue. *Cf. Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010) (affirming trial court's enjoinment of a California proceeding when the parties agreed in a broad forum selection clause to litigate disputes in either Delaware or New York).

First, it bears noting that the forum selection clause at issue is not what would typically be considered a "broad selection clause." When parties utilize phrases such as "any action on a claim arising out of, under or in connection with," *see Elf Atochem N. Am., Inc. v. Jaffari*, 727

A.2d 286, 294 (Del. 1999), or "any dispute or litigations," *see Double Z Enters., Inc. v. Gen. Mktg. Corp.*, C.A. No. 97C-08-076, 2000 Del. Super. LEXIS 200, at *5 (Del. Super. Ct. June 1, 2000), within forum selection clauses, Delaware courts have read those clauses as essentially encompassing all disputes between the parties. *See also CA, Inc. v. Ingres Corp.*, C.A. No. 4300-VCS, 2009 Del. Ch. LEXIS 204, at *169 n. 290 (Del. Ch. Dec. 7, 2009) ("Language such a[s] 'relate to' or 'arise out of' is to be read broadly."). In *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Trust*, C.A. No. 6562-VCP, 2011 Del. Ch. LEXIS 129 (Del. Ch. Sept. 14, 2011), the court concluded that a forum section clause in favor of Delaware courts that read "with respect to any claim or cause of action arising under or relating to th[e] Agreement[s]" prohibited a party from pursuing claims for fraud, fraud in the inducement, negligent misrepresentation, breach of fiduciary duty, and tortious interference with contract in a Texas court because the disputes related to the contract in question. *Id.* at *5-*6, *20. In contrast, the language of the present clause is narrower, providing that Delaware law governs the NDA and that "any disputes hereunder" shall be resolved in Delaware courts.

The Delaware Chancery Court addressed a forum clause very similar to the present clause in *Ashall Homes Ltd. v. ROK Entertainment Group, Inc.*, 992 A.2d 1239 (Del. Ch. 2010), in which plaintiffs alleged fraud in the inducement, breach of contract, deceit, negligent misrepresentation, tortious interference with business relations, and conversion over a stock-for-stock exchange gone awry. *Id.* at 1244-45. There, the parties agreed that "This Agreement shall be construed and interpreted in accordance with the laws of England and the English courts shall have jurisdiction over any disputes arising hereunder." *Id.* at 1243. The Plaintiffs contended that their non-contract claims fell outside the forum clause, but the court rejected that argument: "Courts in Delaware and other jurisdictions have found that '[a] forum

selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship.'" *Id.* at 1252-53 (quoting *Simon v. Navellier Series Fund*, Civil Action No. 17734, 2000 Del. Ch. LEXIS 150, at *9-*10 (Del. Ch. Oct. 19, 2000)).

In comparison, a Delaware federal district court decision allowed claims for patent infringement to go forward in Delaware when the parties agreed to jurisdiction in Santa Clara County, California in a confidentiality agreement. *See XPRT Ventures, LLC v. eBay Inc.*, Civ. No. 10-595-SLR, 2011 U.S. Dist. LEXIS 607555, at *8-*9 (D. Del. Jun. 8, 2011). There, the parties "expressly consent[ed], and submit[ted] themselves[] to the exclusive jurisdiction of the courts of California," and "stipulated that venue shall be in Santa Clara County for the adjudication or disposition of any claim, action or dispute arising out of this [confidentiality] Agreement," and further agreed that the confidentiality agreement was no bar to any claims for patent infringement. *Id.* at *9-*10. Similarly, in *Eisenmann Corp. v. General Motors Corp.*, No. C.A. 99C-07-260-WTQ, 2000 WL 140781 (Del. Super. Ct. Jan. 28, 2000), the parties entered into a series of contracts for design and construction services for auto assembly plants around the world. *Id.* at *1. Eisenmann alleged that it offered GM a discount if certain contracts were bundled together, GM either canceled the contracts or did not award all of the contracts subject to bundling, and, as a result, Eisenmann suffered damages. *Id.* at *4-*5. GM moved to dismiss these counts based on the forum selection clauses in the individual construction contracts in favor of Argentina and Germany. *Id.* at *7. The court, however, allowed the suits to go forward in Delaware because the claims regarding the "bundling" of the contracts were separate than the breach of the individual contracts. *Id.* at *8.

B.      The Present Dispute

9

As noted, a contract is to be read as a whole in order to give each provision and term effect. *See Kuhn Constr. Inc.*, 990 A.2d at 396-97. In light of that familiar principle, Athena directs the court's attention to other parts of the NDA as relevant to the present dispute. First, Athena notes that the parties' stated purpose for entering into the NDA:

> The parties wish to discuss certain business opportunities related to Point Lookout Resort & Conference Center, located in Northport, Maine. In connection with such discussions and any related business between such parties, the parties may disclose Confidential Information . . . to each other. This agreement is entered into for the purpose of specifying the conditions under which each party may disclose to the other party orally, or in writing, such party's Confidential Information and specifying the conditions under which each party may use and disclose the other party's Confidential Information with respect to the above.

(NDA at 1.) The NDA also provides: "Neither this Agreement nor any discussions or disclosures hereunder shall prevent either party from conducting similar discussions or performing similar work to that hereunder, so long as such discussions or work do not violate the [NDA]." (NDA § 2.)

Athena argues that because the stated purpose of the agreement relates to the acquisition of Point Lookout, the forum selection clause should apply to any dispute related to Point Lookout. Cordjia alleges that the subsequent partnership agreement between the parties forms the basis for its claims against Athena; that those claims are freestanding and not dependent on the NDA, and that the NDA does not define the scope of the relationship between the parties or consist of the parties' entire agreement.

The NDA, by its plain terms, governs the exchange and use of defined Confidential Information between the parties. The NDA does not, as Athena argues, govern all disputes between the parties related to Point Lookout, but does express a clear intention to govern how the parties utilize exchanged Confidential Information, and thus any claim that relies on

10

Athena's unauthorized use of the Confidential Information falls within the scope of the forum selection clause, is subject to Delaware law, and must be litigated in Delaware courts.[7]

With that in mind, Cordjia's claims for unjust enrichment (Count IV) and quantum meruit (Count V) clearly concern the exchange of Confidential Information. Cordjia asserts that these claims only lie in the absence of a binding contract, and thus cannot arise under the NDA (M. Dismiss 4),[8] but that argument misses the mark. Although Cordjia is correct that each cause of action presumes the absence of a valid contract, the focus of the court's inquiry is not the merits of each claim, but on whether claim relies on the same basic facts as the contract claim.[9] *See Ashall Homes Ltd.*, 992 A.2d at 1253-54. In its unjust enrichment claim, Cordjia alleges that it conferred a benefit upon Athena "in the form of reports, analyses and information Cordjia had prepared regarding the strategy for acquiring, repositioning, and operating Point Lookout," that Athena knew of the benefit, and that Athena accepted and received it under such circumstances as to make it inequitable to retain it. (Compl. ¶¶ 40-42.) Similarly, in its claim for quantum meruit, Cordjia alleges that it provided services to Athena, including the "preparation of detailing engineering, financial, and operational reports and analyses regarding the acquisition and operation of Point Lookout." (Compl. ¶ 44.) Both counts involve the exchange of information between the parties governed by the NDA and thus must be dismissed and litigated in the courts of Delaware.

---

[7] Cordjia reaches this same conclusion regarding the scope of the agreement: "The NDA, therefore, governs only the exchange and use of confidential information; it does not even purport to govern the parties' relationship" (Opp'n M. Dismiss 8); "the NDA relates only to the parties' relative rights and obligations with respect to the exchange and use of confidential information" (Opp'n M. Dismiss 9).

[8] It bears noting that neither party has challenged the validity of the NDA.

[9] Cordjia argues that its non-contractual claims are neither related nor connected to the relationship reflected within the contract, citing a number of Delaware cases. (Opp'n M. Dismiss 8-9.) Each of these cases is at least in part distinguishable because the non-contract claims all stemmed from a broad contractual relationship between the parties, such as parent and school, franchisor and franchisee, and retailer and distributor, and contained a broad forum selection clause. *See Doe v. Cedars Acad., LLC*, C.A. No. 09C-09-136 JRS, 2010 Del. Super. LEXIS 559, at *5, *25-*26 (Del. Super. Ct. Oct. 27, 2010); *Loveman v. Nusmile, Inc.*, C.A. No. 08C-08-223 MJB, 2009 Del. Super. LEXIS 135, at *3, *12-*13 (Del. Super. Ct. Mar. 31, 2009); *Double Z Enters., Inc. v. Gen. Mktg. Corp.*, C.A. No. 97C-08-076, 2000 Del. Super. LEXIS 200, at *5, *10 (Del. Super. Ct. June 1, 2000).

11

Similarly, Count VIII, which alleges violations of Maine's Uniform Trade Secrets Act, 10 M.R.S. §§ 1541-48, must also be dismissed. Cordjia alleges that Athena misappropriated Cordjia's Confidential Information—the trade secrets—and used it to secure acquisition of Point Lookout for itself. (Compl. ¶ 61.) Because the parties not only agreed that Delaware courts will hear disputes over the exchange of confidential information, but also agreed that Delaware law would govern the exchange of Confidential Information, this count must be dismissed for both improper forum and for failure to state a claim upon which relief can be granted based on the choice of laws provision.

The remaining counts are fraud (Count I), negligent misrepresentation (Count II), breach of fiduciary duty (Count III), and promissory estoppel (Count VI). The general allegations in each count are similar. In Counts I, II, and VI, Cordjia alleges that Athena led Cordjia to believe they would jointly acquire Point Lookout and Cordjia relied on Athena's statements and promises by not pursuing other options to acquire Point Lookout. (Compl. ¶¶ 25-27, 30-32, 47-49.) The breach of fiduciary duty claim alleges that Cordjia and Athena were engaged in a partnership and Athena breached its fiduciary duties to Cordjia by unilaterally ending the relationship and usurping for its own advantage the partnership opportunity of acquiring Point Lookout. (Compl. ¶¶ 35-37.) Each of these counts relies on promises that do not involve the use or exchange of Confidential Information and thus do not fall within the scope of the NDA or the forum selection clause.

Athena, however, argues that the NDA also disavows an intent to prevent either party from engaging in its own negotiations concerning the purchase of Lookout Point and points to the provision in the NDA that states: "Neither this Agreement nor any discussions or disclosures hereunder shall prevent either party from conducting similar discussions or performing similar work to that hereunder, so long as such discussions or work do not violate

12

the [NDA]." (NDA § 2.) Athena argues that whether Cordjia's reliance on any of Athena's statements or alleged promises was reasonable will require an interpretation of this provision of the contract. (M. Dismiss 10.) Cordjia, on the other hand, interprets this provision as allowing the parties to engage in similar discussions and exchange information with other parties at the same time the NDA is in effect. (Opp'n M. Dismiss 5.)

This is not a situation where the contract at issue—the NDA—purports to govern the entire relationship between the parties. That is, unlike in *Ashall Homes Ltd.*, Cordjia's partnership-based claims are not based entirely on the NDA nor do they grow out of the limited contractual relationship evidenced in the NDA. 992 A.2d at 1252-53. In fact, the NDA disavows any relationship or obligation between Cordjia and Athena beyond the explicit provisions of the NDA itself. In that sense, it would be anomalous and even irrational to construe the NDA to dictate the remedy for breach of partnership obligations alleged to have arisen after the NDA, when the NDA explicitly disclaims the existence of any such obligations.

As noted at oral argument, the price of Cordjia's pursuing what it characterizes as its freestanding partnership claims in Maine is very likely to be a broad order *in limine* excluding any reference at any stage of this case to the information or materials provided by Cordjia to Athena under the NDA, because any such evidence likely would only be relevant to a claim governed by the NDA. In other words, Cordjia must be prepared to make a prima facie case on its claims on events and discussions that both occurred after the execution of the NDA and did not involve the transmittal of information or materials by Cordjia to Athena under the NDA.

Should Athena move for summary judgment on any remaining claim or issue, the court will not entertain any objection from Cordjia that relies on Cordjia's having provided information or materials to Athena under the NDA. Athena, on the other hand, will be free to use the NDA in its defense, among other things to establish that, at least as of the date of the

13

NDA, there was no obligation or duty between the parties except those expressly set forth in the NDA, and Cordjia likely would be precluded from contesting that position because that, too, would be an issue under the NDA.

It is doubtful whether Cordjia will be able to sustain its burden of persuasion on any of its remaining claims, if it cannot present evidence regarding what information and materials it provided to Athena, or evidence of the value of Cordjia's information and materials to Athena in the context of the Point Lookout opportunity. However, based on the limited record thus far, the court cannot say that Cordjia will be unable to support its remaining claims independently of such evidence.

Because Cordjia's current complaint does include claims under the NDA, the court is requiring Cordjia to file an amended complaint that clearly excludes any reference to Cordjia's having furnished information or materials under the NDA.

Finally, should either party initiate action in Delaware for declaratory judgment regarding the NDA in the case of Athena or for damages under the NDA in the case of Cordjia, the issue of whether this case should be stayed in favor of such litigation will likely arise, and nothing in this Order should be deemed to limit the court's options in that event.

## CONCLUSION

Based on the foregoing, it is hereby ordered as follows:

1. Defendant athenahealth, Inc.'s Motion to Dismiss is GRANTED as to Counts IV, V, VII, and VIII.

2. Defendant athenahealth, Inc.'s Motion to Dismiss is DENIED as to Counts I, II, III, and VI.

3. Cordjia is hereby ordered to file within 20 days an amended complaint restating Count I, II, III, and VI, but omitting reference to the NDA or to Cordjia's provision of information and materials under the NDA.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this Order and Judgment by reference in the docket.

Dated: 11/17/11

_____
A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 11.18.11
Copies sent via Mail ___ Electronically ✓

15

## BUSINESS AND CONSUMER COURT

## Cordjia, LLC v. Athenahealth, Inc.
BCD-CV-2011-30

*Counsel of Record*

| Attorney Name | Party Name |
|---|---|
| Timothy Bryant, Esq. | Cordjia, LLC |
| John Lambert, Esq. | Athenahealth, Inc. |
| Anthony Fiotto, Esq. | " " |
| Derek Adams, Esq. | " " |