COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: March 5, 2019
Date Decided: May 21, 2019

Peter J. Walsh, Jr., Esquire
Jacob R. Kirkham, Esquire
Jay G. Stirling, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19899

Martin S. Lessner, Esquire
Elisabeth S. Bradley, Esquire
Daniel M. Kirshenbaum, Esquire
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19899

RE:  *Computer Sciences Corporation v. Eric Pulier, et al.*
     Civil Action No. 11011-CB

Dear Counsel:

This letter constitutes the court's decision on the motion of Computer Sciences Corporation ("CSC") for partial summary judgment on Count IX of its Verified Second Amended Complaint. For the reasons explained below, the motion will be denied.

## I.    Background[1]

CSC is a publicly held Nevada corporation that provides information technology and professional services. In 2013, CSC acquired ServiceMesh, Inc. for

---

[1] The facts recited herein come from the allegations of the Second Amended Complaint that are not in dispute as well as affidavits and documents submitted in connection with CSC's motion for partial summary judgment.

over $260 million under the terms of an Equity Purchase Agreement, dated as of October 29, 2013 (the "EPA").[2]  The transaction closed on November 15, 2013.[3]

After receiving an initial cash payment, the former equityholders of ServiceMesh received an earnout payment of approximately $98 million based on revenue generated by ServiceMesh during a "measurement period" that ran from January 1, 2013 through January 31, 2014.[4]  Relevant to the pending motion, the equityholders agreed in Section 10.1 of the EPA to indemnify and hold CSC and ServiceMesh harmless, severally and not jointly, for certain categories of losses.

On May 12, 2015, CSC filed this action against Eric Pulier, the founder and former Chief Executive Officer of ServiceMesh, and Shareholder Representative Services LLC ("SRS"), in its capacity as the exclusive agent and attorney-in-fact for the former equityholders of ServiceMesh.[5]  As the court explained in deciding a previous motion in this case, the gravamen of the Second Amended Complaint is that Pulier, acting on behalf of ServiceMesh, entered into a secret "side agreement" with executives at Commonwealth Bank of Australia Limited that allegedly involved

---

[2] Second Am. Compl. ¶ 1 (Dkt. 53); Stirling Aff. Ex. 2.

[3] Second Am. Compl. ¶ 33.

[4] *Id.* ¶ 1; EPA § 3.1(e) (providing for an earnout payment) & Sched. 3.1(e) (defining the "measurement period") (Stirling Aff. Ex. 2).

[5] Second Am. Compl. ¶¶ 5-6, 12.

paying them bribes to enter into contracts with ServiceMesh in order to artificially inflate ServiceMesh's revenue during the measurement period and trigger the earnout payment.[6]  According to CSC, no earnout payment would have been due but for these actions.[7]

In August 2015, Pulier demanded that CSC and/or ServiceMesh advance the fees and expenses he had incurred in defending this action.[8]  By letter dated September 2015, CSC notified SRS of Pulier's advancement demand and explained that if CSC was required to provide advancement to Pulier, the former equityholders may be required to indemnify CSC under several subsections of Section 10.1 of the EPA.[9]

In February 2016, Pulier filed a separate action (C.A. No. 12005-CB) seeking advancement from CSC and ServiceMesh for expenses he had incurred and would incur in the future in defense of this action.[10]  On May 12, 2016, the court granted in part and denied in part Pulier's motion for summary judgment on his advancement

---

[6] *See* Dkt. 82 at 7-8 (Apr. 29, 2016).

[7] *Id.*

[8] Stirling Aff. Ex. 3.

[9] Stirling Aff. Ex. 4.

[10] *Pulier v. Computer Sciences Corp.*, C.A. No. 12005-CB, Verified Compl. for Advancement (Dkt. 1).

claims. In brief, the court found that Pulier was entitled to advancement from ServiceMesh (but not CSC) arising from his position as an officer of ServiceMesh before the closing for certain (but not all) of the claims in this action under (i) ServiceMesh's bylaws and (ii) an indemnification agreement Pulier had entered into with ServiceMesh in November 2011.[11]

In February 2017, Pulier filed a second action (C.A. No. 2017-0081-CB) seeking advancement from ServiceMesh, this time to cover "the expenses he has incurred and continues to incur to defend against investigations instituted by the United States and Australian Governments."[12] On August 7, 2017, the court granted Pulier's motion for judgment on the pleadings, finding that the criminal investigations relate to "the same earnout bribery scheme that is the subject of CSC's allegations in the Underlying Action [C.A. No. 11011-CB], and that puts Pulier's conduct as an officer of ServiceMesh squarely at issue."[13]

From July 20, 2017 until January 30, 2019, this action was stayed at the request of the United States Government during the pendency of a federal criminal

---

[11] *Pulier v. Computer Sciences Corp.*, C.A. No. 12005-CB, at 20, 27-28 (Del. Ch. May 12, 2016) (TRANSCRIPT).

[12] *Pulier v. CSC Agility Platform, Inc.*, C.A. No. 2017-0081-AGB, Verified Compl. ¶ 1 (Dkt. 1).

[13] *Pulier v. CSC Agility Platform, Inc.*, C.A. No. 2017-0081-AGB, at 14, 25-26 (Del. Ch. Aug. 7, 2017) (TRANSCRIPT).

proceeding against Pulier, which ultimately was dropped. On February 7, 2019, after the stay was lifted, CSC filed its motion for partial summary judgment on Count IX of its Second Amended Complaint, seeking to recover a portion of the amount it had advanced to Pulier on behalf of ServiceMesh under the advancement orders entered in C.A. Nos. 12005-CB and 2017-0081-AGB. According to CSC, that amount exceeds $18 million.[14]

## II.    Analysis

Under Court of Chancery Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15] "[T]he court must view the evidence in the light most favorable to the non-moving party."[16] "When interpreting a contract, the role of a court is to effectuate the parties' intent. In doing so, [the court is] constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended."[17]

---

[14] Deckelman Decl. ¶ 4 (Stirling Aff. Ex. 1).

[15] Del. Ch. Ct. R. 56(c).

[16] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).

[17] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

Additionally, as our Supreme Court has said, "indemnity provisions are to be construed strictly rather than expansively" under Delaware law.[18]

Count IX of the Second Amended Complaint seeks a declaration determining the validity and amount of CSC's indemnification claims against SRS and certain former equityholders of ServiceMesh.[19]  CSC seeks partial summary judgment on Count IX, contending that it is entitled to indemnification as a matter of law for a portion of the amounts it has advanced to Pulier to date on behalf of ServiceMesh under Section 10.1(d)(ii) of the EPA.[20]  That provision states that the equityholders of ServiceMesh:

> shall, severally and not jointly, indemnify and hold [CSC and ServiceMesh] harmless from and against any and all . . . losses . . . arising out of or resulting from:
>
> *****
>
> (d) any claims . . . (ii) by any officer, director, employee or other agent of [ServiceMesh] for indemnification or advancement of expenses required under the Company's Organizational Documents or under any indemnification agreement or otherwise *to the extent such indemnification or advancement of expenses obligations relate to the authorization and approval of this Agreement [the EPA] and the*

---

[18] *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 824 n.42 (Del. 2013) (internal quotation marks omitted).

[19] Second Am. Compl. ¶ 211.

[20] Pl.'s Opening Br. ¶ 31(a).

> *transactions contemplated hereby by the [ServiceMesh] Board of Directors.*[21]

Focusing on the language italicized above, defendants (Pulier and SRS) argue that CSC's motion must be denied because the plain language of this provision does not cover the advancement obligations at issue here. The court agrees.[22]

As I read Section 10.1(d)(ii), it imposes an indemnification obligation on the former equityholders of ServiceMesh only for advancement obligations that "relate to the authorization and approval" by the ServiceMesh Board of Directors of (i) the EPA or (ii) "the transactions contemplated" by the EPA.[23] In other words, to trigger an indemnification obligation on the equityholders for the advancement expenses that ServiceMesh has paid for litigation defense, the underlying claims must challenge the ServiceMesh Board's authorization and approval of the EPA or the transactions contemplated by the EPA. An example would be a lawsuit for breach

---

[21] EPA § 10.1(d)(ii) (emphasis added). The term "Organizational Documents" is defined to include ServiceMesh's bylaws. *Id.* § 1.1. Thus, those bylaws fall within the scope of Section 10.1(d)(ii) along with the second source of Pulier's right to advancement, *i.e.*, his November 2011 indemnification agreement with ServiceMesh.

[22] Given the court's conclusion that the plain language of Section 10.1(d)(ii) does not apply, the court does not address Pulier's other arguments.

[23] EPA § 10.1(d)(ii).

7

of fiduciary duty challenging the ServiceMesh Board's approval of the EPA as being the product of a flawed sale process under *Revlon* and its progeny.[24]

The fact that a transaction broadly relates to the EPA—such as by implicating the earn-out provision therein—does not mean that it falls within Section 10.1(d)(ii). Rather, the provision is meant to target advancement for lawsuits specifically relating to the ServiceMesh Board's authorization and approval of either the EPA or transactions arising from the EPA.[25]

CSC argues that Section 10.1(d)(ii) should be read to encompass "not only advancement claims dealing directly with the ServiceMesh Board's authorization and approval of the EPA and the transactions contemplated thereby, but also any advancement claims that touch on or derive from that authorization and approval."[26] This construction is unreasonable in my opinion. The language from Section

---

[24] *See Revlon, Inc. v. MacAndrews & Forbes Hldgs., Inc.*, 506 A.2d 173, 185 (Del. 1986) (affirming a preliminary injunction where the directors breached their fiduciary duties by "allow[ing] considerations other than the maximization of shareholder profit to affect their judgment" in the course of a sales process).

[25] The parties disagree about the meaning of "relate to" and how broadly or narrowly it should be read, with both sides marshalling cases to support their positions. The scope of the term "relate to" does not control the result here. Even if "relate to" were given its broadest meaning, Pulier and other former equityholders of ServiceMesh would not have an indemnification obligation with respect to the claims for which Pulier has received advancement because of the narrowing effect of the language "authorized and approved" and "by the Board of Directors" that appears in Section 10.1(d)(ii).

[26] Pl.'s Opening Br. ¶ 22.

10.1(d)(ii) italicized above begins with the phrase "to the extent," which serves as a limitation on the circumstances under which the equityholders will be required to indemnify ServiceMesh for advancement expenses it has paid. To repeat, to impose such an obligation, the claim for which advancement is provided must "relate to" an act of Board "authorization and approval."

CSC's interpretation focuses on whether there is a nexus between the claims for which advancement was provided and the EPA or its related transactions rather than whether there is a nexus between the *Board's approval* of the EPA or its related transactions and the claims for which advancement was provided. In other words, CSC's interpretation effectively reads out of Section 10.1(d)(ii) the phrases "authorized and approved" and "by the Board of Directors," contrary to the basic principle that "a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless."[27]

Turning to the facts here, as discussed previously, the claims for which Pulier has received advancement from CSC relate to the "side agreement" that Pulier allegedly authorized (as an officer of ServiceMesh) in order to inflate revenues during the measurement period and trigger the earnout as part of an illegal bribery

---

[27] *Sonitrol Hldg. Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992); *see also Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) (stating that the court must not "render any part of the contract mere surplusage").

9

scheme. CSC does not contend that the ServiceMesh Board ever authorized or approved the side agreement or that the side agreement was one of the transactions contemplated by the EPA. Nor could it. This is because the claims for which Pulier obtained advancement from ServiceMesh all proceed from the premise that Pulier engineered the side agreement to *circumvent* the earnout provision in the EPA through an illegal scheme that the ServiceMesh Board never authorized.[28]

## III.    Conclusion

For the reasons explained above, the advancement of funds to Pulier at issue here does not trigger an indemnification obligation under Section 10.1(d)(ii) of the EPA. Accordingly, CSC's motion for partial summary judgment on Count IX of its Second Amended Complaint is **DENIED**.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

---

[28] *See* Dkt. 82 at 19 (explaining that the alleged side agreement had "been undertaken to circumvent certain provisions of the EPA and not for the purpose of performing obligations arising under the EPA").