**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| AMC ENTERTAINMENT HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N23C-05-045 MAA CCLD |
| XL SPECIALTY INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., BERKLEY INSURANCE COMPANY, QBE INSURANCE CORPORATION, MIDVALE INDEMNITY COMPANY, CONTINENTAL CASUALTY COMPANY, STARR INDEMNITY & LIABILITY COMPANY, ARCH INSURANCE COMPANY, FREEDOM SPECIALTY INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, EVEREST NATIONAL INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, AXIS INSURANCE COMPANY, RSUI INDEMNITY COMPANY, SAMSUNG FIRE & MARINE INSURANCE CO., LTD., and HUDSON EXCESS INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: December 17, 2024
Decided: February 28, 2025

## MEMORANDUM OPINION

*Plaintiff's Motions for Summary Judgment:*
**GRANTED, in part, DENIED, in part.**

*Midvale Indemnity Company's Motion for Summary Judgment:*
**DENIED.**

David J. Baldwin, Esquire of BERGER MCDERMOTT, LLP, Wilmington, DE, Adam S. Ziffer, Esquire (Argued), and Michelle R. Migdon, Esquire (Argued), of COHEN ZIFFER FRENCHMAN & MCKENNA, LLP, New York, NY, *Attorneys for Plaintiff.*

David A. Bilson, Esquire of PHILLIPS MCLAUGHLIN & HALL., Wilmington, DE, and Matthew W. Beato, Esquire (Argued), Joseph W. Gross, Esquire, and Andrea V. Martinez, Esquire of WILEY REIN LLP, Washington, D.C., *Midvale Indemnity Company.*

**Adams, J.**

## I. INTRODUCTION

In this insurance coverage dispute, plaintiff AMC Entertainment Holdings, Inc. ("AMC") seeks coverage for losses incurred in a settled lawsuit brought by AMC shareholders. The defendant insurance companies denied coverage, contending that the settlement payment method, shares of AMC stock provided by AMC to the plaintiffs in the underlying actions, is not covered by the Policies. AMC seeks a declaratory judgment that its settlement payment is covered by its insurance.

Only one defendant, Midvale Indemnity Company ("Midvale"), remains. AMC and Midvale filed cross-motions for summary judgment, seeking the Court's resolution of the insurance coverage dispute. For the reasons that follow, the Court **GRANTS** AMC's Motion in part, **DENIES** it in part, and **DENIES** Midvale's Motion.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

### A. The Parties

AMC is a Delaware corporation with a principal place of business in Kansas.[2] AMC is a movie theater operation company.[3]

AMC filed suit against seventeen insurance companies (the "Insurers"),[4] each of which issued directors and officers ("D&O") insurance policies to AMC (the "Policies").[5] Midvale is a Wisconsin corporation with a principal place of business in Wisconsin.[6] Midvale provided an excess D&O liability policy to AMC (the "Midvale Policy").[7] The Midvale Policy's attachment point is $30M, and responds to 33% of covered "Loss" until AMC incurs $45M in covered "Loss."[8]

### B. The Underlying Action

In 2021, AMC faced financial challenges because of the COVID-19 pandemic.[9] AMC became a popular "meme" stock, with retail investors buying up

---

[1] The Court notes the consequence of both sides filing motions is that facts repeat in briefing, and several exhibits are duplicates. When the Court cites one party's brief or exhibits instead of the other's, the Court intends to imply no preference or priority to any party. The Court merely provides a citation to the record for the fact; other citations may provide the same information, but the Court will not cite every part of the record where the information can be found. Citations to the transcript of the November 26, 2024 hearing addressing the Motions for Summary Judgment are in the form "Tr. #" (D.I. 275).

[2] Compl. ¶ 17 (D.I. 1).

[3] Pl.'s Opening Br. in Supp. of its Mot. for Summ. J. ("AMC Opening") (D.I. 234) 5.

[4] Compl. ¶¶ 18-34.

[5] *Id*. at ¶ 2.

[6] Midvale Indem. Co.'s Ans. and Affirm. Def.s (D.I. 58) ¶ 22.

[7] Compl. ¶ 52(d).

[8] Opening Br. in Supp. of Ins.' Mot. for Summ. J. ("Insurers Opening") (D.I. 235) 5-6.

[9] AMC Opening at 5.

a majority of AMC's shares.[10]  The meme caused AMC's stock price to increase dramatically.[11]  AMC used this opportunity to increase its liquidity, issuing more Class A common stock ("Common Stock") until it approached the limit authorized by its Certificate of Incorporation.[12]  AMC twice sought shareholder approval to amend its Certificate of Incorporation to increase the amount of authorized Common Stock it could issue, but these efforts were unsuccessful.[13]

Unable to issue more Common Stock, AMC created a new security, the AMC Preferred Equity Units ("APEs").[14]  An APE represented a fractional interest in a share of AMC preferred stock.[15]  APEs had the same voting rights as the Common Stock.[16]  APEs would be converted to Common Stock once an increase in the authorized limits of Common Stock was approved by AMC's shareholders.[17]  After selling the APEs, AMC submitted a new shareholder proposal, seeking to both increase the authorized number of Common Stock and effect a 1-for-10 reverse stock split of AMC's Common Stock (the "Proposal").[18]  If approved, the Proposal would allow AMC to convert the APEs into Common Stock.[19]

---

[10] Insurers Opening at 8.
[11] AMC Opening at 5.
[12] *Id*. at 5-6.
[13] *Id*. at 6.
[14] *Id*.
[15] Insurers Opening at 9.
[16] *Id*.
[17] *Id*.
[18] AMC Opening at 6.
[19] *Id*.

5

Seeking to prevent the Proposal, AMC's shareholders (the "Underlying Plaintiffs") filed complaints against AMC, and its directors and officers, in the Delaware Court of Chancery, which were consolidated into a single action (the "Underlying Action").[20] On February 27, 2023, the Court of Chancery entered an order permitting AMC to proceed with an upcoming shareholder meeting regarding the Proposal, but prohibited any amendment to AMC's Certificate of Incorporation pending a ruling by the Court of Chancery (the "Chancery Order").[21] At a March 14, 2023 shareholder meeting, the Proposal was approved, but it could not be implemented under the Chancery Order.[22]

AMC notified its Insurers about the Underlying Action on March 1, 2023.[23] According to the Midvale, on March 28, 2023, counsel for AMC attended a mediation regarding some issues in the Underlying Action, purportedly without telling the Insurers.[24] On March 29, AMC received a settlement offer and held a conference call with the Insurers that same day.[25]

AMC ultimately settled the Underlying Action on April 27, 2023 (the "Settlement").[26] Under the Settlement, AMC agreed to pay 6,897,018 shares of

---

[20] *Id*. at 6-7.
[21] *Id*. at 7.
[22] *Id*.
[23] Insurers Opening at 11.
[24] *Id*.
[25] AMC Opening at 11.
[26] *Id*. at 8.

Common Stock to the Underlying Plaintiffs.[27]   AMC also agreed to pay the Underlying Plaintiffs' attorney's fees (together with the 6,897,018 Common Stock shares, the "Settlement Payment").[28]  In exchange, the Underlying Plaintiffs agreed to release all claims and dismiss the Underlying Action, which would automatically lift the Chancery Order, enabling AMC to institute the Proposal.[29]

On June 30, 2023, the parties to the Underlying Action sought court approval of the Settlement.[30]   The Court of Chancery rejected the Settlement because it included a proposed release of claims by the APE holders, who were not among the Underlying Plaintiffs.[31]  According to Midvale, AMC agreed to remove the language concerning a release of claims by the APE holders without telling the Insurers.[32]  The Court of Chancery approved the revised Settlement on August 11, 2023.[33]

## C. AMC's Accounting Treatment of the Settlement

Beginning with its first quarter 2023 financial statements, AMC recorded the Settlement Payment as a contingent liability and an expense in its books and valued

---

[27] *Id*. at 9.

[28] *Id*. at 8.

[29] *Id*.

[30] Insurers Opening at 14.

[31] *Id*.

[32] *Id*.  AMC sent the Insurers a copy of a term sheet containing the Settlement's terms on March 31, 2023.  AMC Opening at 14.  Midvale contends that AMC sent an outdated term sheet, and that AMC had failed to inform them the Settlement terms were final.  Insurers Opening at 13.

[33] AMC Opening at 9.

it based on the estimated fair value of the shares.[34] AMC valued the Settlement

Payment as a $99.3M expense on its books.[35]

## D. This Insurance Coverage Litigation

AMC's primary D&O insurer, XL Specialty Insurance Company ("XL"),

agreed to advance defense expenses for the Underlying Action, but reserved the right

to deny coverage over the Common Stock shares transferred by AMC pursuant to

the Settlement.[36] AMC initiated this action against the Insurers seeking a declaratory

judgment identifying whether AMC's D&O insurance covers any and all losses

AMC incurred from the Underlying Action.[37]

AMC and certain Insurers, including Midvale, (the "Movants") filed cross-

motions for summary judgment on August 15, 2024.[38] The Movants filed answering

briefs on September 19, 2024,[39] and reply briefs on October 23, 2024.[40] The Court

heard oral argument regarding the cross-motions for summary judgment on

---

[34] AMC Opening at 9.
[35] *Id*. at 10.
[36] Insurers Opening at 19.
[37] Compl. ¶¶ 1, 89-99.
[38] Pl.'s Mot. for Summ. J. (D.I. 233); Ins.' Mot. for Summ. J. (D.I. 235).
[39] Ins.' Ans. Br. in Opp. to Pl.'s Mot. for Summ. J. ("Insurers Response") (D.I. 243); Pl.'s Ans. Br. in Opp. to Ins.' Mot. for Summ. J. ("AMC Response") (D.I. 244).
[40] Pl.'s Reply Br. in Further Supp. of its Mot. for Summ. J. (D.I. 248); Reply Br. in Supp. of Ins.' Mot. for Summ. J. (D.I. 249).

November 26, 2024.[41] On December 10, 2024,[42] and December 17, 2024,[43] the Movants filed additional briefing regarding Delaware caselaw raised by AMC during their oral argument.[44]

## E. Relevant Policy Language

XL's primary policy provides that XL will "pay [Loss] on behalf of [AMC]."[45] "Loss" is a defined term in the Policies: "'Loss' means damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) that any Insured is legally obligated to pay and Defense Expenses, including that portion of any settlement which represents the claimant's attorneys' fees."[46]

Each of the excess Policies, including the Midvale Policy, follows form to the XL policy.[47] The Midvale Policy states that it "attach[es] only after the insurers of the Underlying Insurance, the Insureds, any DIC Insurer, or any other source shall

---

[41] D.I. 262.

[42] Letter from John C. Phillips, Jr., Esq. to The Hon. Meghan A. Adams Re. Supplemental Summ. J. Submission on "Bump Up" Provision ("Midvale Letter") (D.I. 265).

[43] Letter from David J. Baldwin to The Hon. Meghan A. Adams Re. Pl.'s Supplemental Summ. J. Submission on "Bump Up" Provision (D.I. 268).

[44] Tr. 88:10-15.

[45] AMC Opening Ex. 1 at AMC-INS0000579. The Primary Policy issued by XL Specialty Insurance Company contains the Insuring Agreement and definitions to which the excess Policies, such as Midvale's, follow form. Insurers Opening at 22.

[46] AMC Opening Ex. 1 at AMC-INS0000582.

[47] Insurers Opening at 7.

have paid in legal tender the full amount of the Underlying Insurance, and any applicable retention or deductible."[48] (The "Exhaustion and Legal Tender Clause").

The Policies provide that "[n]o Insured may…make any settlement offer with respect to, or settle any Claim without the Insurer's consent, such consent not to be unreasonably delayed or withheld."[49]

## III. STANDARD OF REVIEW

### A. Summary Judgment

Pursuant to Delaware Superior Court Civil Rule 56(c), summary judgment "shall be rendered forthwith if…there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law."[50] A genuine dispute about a material fact is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[51] The burden is on the moving party to show the undisputed facts support its position.[52] Once the burden is met, the burden shifts to the nonmoving party to "show that there are material issues of fact the ultimate fact-finder must resolve."[53] A court will not grant summary judgment if "it appears that there is a material fact in dispute or that further inquiry

---

[48] *Id*. at Ex. 1 at MIDVALE00000539.
[49] AMC Opening Ex. 1 at AMC-INS0000586.
[50] Super. Ct. Civ. R. 56(c).
[51] *Gateway Ests., Inc. v. New Castle Cty.*, 2015 WL 13145613, at *13 (Del. Super. Sept. 19, 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986)).
[52] *Olga J. Nowak Irrev. Tr. v. Voya Fin'l Inc.*, 2020 WL 7181368, at *3 (Del. Super. Nov. 30, 2020) (citing *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979)).
[53] *Id.* (citing *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

into the facts would be appropriate."[54] The moving party's claim must be "based on more than mere speculation."[55]

When the parties have filed cross-motions for summary judgment, "the standard for summary judgment 'is not altered.'"[56] If "neither party argues the existence of a genuine issue of material fact, 'the Court shall deem the motions to be the equivalent of a stipulation for a decision on the merits based on the record submitted with the[m].'"[57] Even when cross-motions are filed, if "an issue of material fact exists, summary judgment is not appropriate."[58]

## B. Insurance Contract Interpretation

Issues of contract interpretation are questions of law reserved for the court.[59] "[T]he terms of an insurance contract are to be read as a whole and given their plain

---

[54] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).

[55] *Pazuniak L. Off., LLC v. Pi-Net Int'l, Inc.*, 2016 WL 3916281, at *2 (Del. Super. July 7, 2016).

[56] *Capano*, 2013 WL 2724634, at *2 (quoting *Total Care Phys.s, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001)) (internal quotation marks omitted).

[57] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *4 (Del. Super. Oct. 28, 2020) (quoting Del. Super. Ct. Civ. R. 56(h)).

[58] *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. June 8, 2017) (citing *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1029 (Del. Ch. 2008)).

[59] *Benchmark Invs. LLC v. Pacer Advisors, Inc.*, 2024 WL 3567367, at *6 (Del. Super. July 29, 2024) (citing *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009)).

and ordinary meaning."[60]  "Insurance contracts should be interpreted as providing broad coverage to align with the insured's reasonable expectations."[61]

A ruling on summary judgment defining an insurance policy's interpretation is "appropriate only if the contract in question is unambiguous."[62]  A determination on whether or not a contract is ambiguous is "within the sole province of the court."[63] "A contract is ambiguous when a court 'may reasonably ascribe multiple and different interpretations to a contract[.]'"[64]  The court reviewing a contract for ambiguity shall "give each provision and term effect, so as not to render any part of the contract mere surplusage."[65]  "[W]ords used in different parts of the same agreement are presumed to 'bear the same meaning throughout[.]'"[66]

---

[60] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 291 (Del. 2001).

[61] *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 906 (Del. 2021) (citing *AT&T Corp. v. Clarendon Am. Ins. Co.*, 2006 WL 1382268, at *9 (Del. Super. Ct. Apr. 13, 2006), *rev'd in part on other grounds*, *AT&T Corp. v. Faraday Cap. Ltd.*, 918 A.2d 1104, 1108 (Del. 2007)).

[62] *United Rentals, Inc. v. RAM Hldg.s, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007).

[63] *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010)) (internal quotation marks omitted).

[64] *Benchmark Invs. LLC*, 2024 WL 3567367 at *6 (quoting *Osborn ex rel. Osborn*, 991 A.2d at 1160).

[65] *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010) (citing *Energy P'rs, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *13 (Del.Ch. Oct 11, 2006)).

[66] *Terrell v. Kiromic Biopharma, Inc.*, 2024 WL 370040, at *7 (Del. Ch. Jan. 31, 2024) *rev'd on other grounds*, 2025 WL 249073 (Del. Jan. 21, 2025) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170-73 (2012)).

## IV.    ANALYSIS

### A. AMC's Settlement Constitutes a "Loss" as Defined by the Policies.[67]

AMC contends the Settlement is covered by all of the Insurers' Policies, including the Midvale Policy.[68]   Midvale contends that the Settlement, which required AMC to issue stock to the claimants, did not constitute a covered "Loss" as defined by the Policies.[69]

The Policies' Insuring Agreement provides the Insurers will "pay [Loss] on behalf of [AMC]."[70]   As previously discussed, "Loss" is a defined term in the Policies: "'Loss' means damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) that any Insured is legally obligated to pay and Defense Expenses, including that portion of any settlement which represents the claimant's attorneys' fees."[71]

Midvale contends that because shares of stock are not money which can be "paid," the Polices do not cover the Settlement, which provides that AMC will issue

---

[67] The Movants agree that the Court need not determine the value of AMC's "Loss", so long as the "Loss" is worth more than just the value of the attorneys' fees paid to the Underlying Plaintiffs. Tr. 41:8-20, 45:6-16.
[68] AMC Opening at 17.
[69] Insurers' Opening at 22-23.
[70] AMC Opening Ex. 1 at AMC-INS0000579.  The Primary Policy issued by XL Specialty Insurance Company contains the Insuring Agreement and definitions to which the excess Policies, such as Midvale's, follow form.  Insurers Opening at 22.
[71] AMC Opening Ex. 1 at AMC-INS0000582.

stock to the Underlying Plaintiffs rather than pay in cash.[72]  Midvale argues AMC *issued* stock but did not *pay* any amount which reaches the excess Policies.[73]

AMC asserts the shares constitute an amount AMC was legally obligated to pay for a settlement, making the expended shares a covered "Loss."[74]  AMC notes the "Loss" definition contains no language limiting its application to cash payments.[75]

The Court agrees with AMC.  The definition of "Loss" in the Policies does not restrict coverage to cash payments or monetary amounts.  "Pay," as used in the "Loss" definition, is not a defined term.  Insurance policies should be interpreted to favor broad coverage.[76]  The Court will not insert a restricting clause into the Policy which provides that only cash settlements are covered "Loss."

Delaware caselaw recognizes the close similarity between stock and cash money.  "Stock is a form of currency that can be exchanged for other forms of currency or used for a variety of corporate purposes, including paying off debts, acquiring assets, compensating employees, or acquiring other entities."[77]

---

[72] Insurers Opening at 23.
[73] *Id.*
[74] AMC Opening at 17.
[75] *Id.* at 18.
[76] *RSUI Indem. Co.*, 248 A.3d at 906 (citing *AT&T v. Clarendon*, 2006 WL 1382268 at *9).
[77] *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1053 (Del. Ch. 2015), *as revised* (May 21, 2015), *judgment entered sub nom. In re Activision Blizzard, Inc. Stockholder Litig.*, 2015 WL 2415559 (Del. Ch. May 20, 2015).

That stock can be "paid" is supported elsewhere in the Policies. The Policies include a "Bump-Up" Exclusion: "Loss" does not include "any amount which represents or is substantially equivalent to an increase in the consideration paid, or proposed to be paid, by the Company in connection with its purchase of any securities or assets of any person, group of persons, or entity."[78] This exclusion is not applicable to the issue presented, but its use of the word "paid" is relevant. "[W]ords used in different parts of the same agreement are presumed to 'bear the same meaning throughout[.]'"[79] Delaware courts have reviewed similar bump-up exclusion clauses in evaluating transactions in which stock, not cash, is exchanged.[80] That the Bump-Up Exclusion clause, including its use of the word "paid," can apply to stock transfers necessarily implies that stock can be an amount AMC "pay[s]" which creates covered "Loss."[81]

The Policies also contain a clause providing how to convert the value of foreign currency to United States currency for valuation of a "Loss."[82] This indicates

---

[78] AMC Opening Ex. 1 at AMC-INS0000583.
[79] *Terrell*, 2024 WL 370040, at *7 (quoting Scalia & Garner, *supra* note 67, at 170-73).
[80] *See generally Viacom Inc. v. U.S. Specialty Ins. Co.*, 2023 WL 5224690 (Del. Super. Aug. 10, 2023); *Northrup Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015 (Del. Super. Feb. 2, 2021).
[81] Midvale contends the Bump-Up Exclusion uses "paid" in a different manner as "pay" is used in the "Loss" definition. Midvale Letter at 3. This argument is unpersuasive, as words take the same meaning in different parts of the same contract. *Terrell*, 2024 WL 370040, at *7 (citing Scalia & Garner, *supra* note 67, at 170-73).
[82] AMC Opening Ex. 1 at AMC-INS0000592.

the parties' awareness that "Loss" payments may come in many forms and require a valuation for insurance indemnity purposes.[83]

Midvale contends that AMC's stock payment should not be covered because the Insurers cannot pay that stock "on behalf of" AMC.[84] As Midvale explains, only AMC is empowered to issue new AMC stock, but the Policies require the Insurers to make payments on AMC's behalf, so stock transfers cannot be covered "Loss."[85]

While it is true that only AMC could issue new shares to satisfy the Settlement Payment, Midvale's argument still fails. The Policies obligate the Insurers to indemnify AMC for covered "Loss," but do not *require* the Insurers to pay that "Loss" directly.[86] The Insurers' inability to directly pay the Underlying Plaintiffs does not impact their obligation to indemnify AMC for "Loss" AMC sustained in settling litigation.

The Settlement Payment includes an amount of shares, which AMC was legally obligated to pay under the terms of the Settlement. The Settlement payment, including stock, therefore satisfies the Policies' definition of "Loss," and invokes

---

[83] Midvale contends the absence of any provision defining how to value stock for indemnification purposes indicates stock is not covered by the Policies. Insurers Opening at 25. The Court is not persuaded that the absence of a valuation clause clearly shows stock payments are not covered by the Policies.

[84] Insurers Opening at 23-24.

[85] *Id*.

[86] *See Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 4130631, at *19 (Del. Super. Sept. 10, 2021) (coverage applies even where the insured did not pay the underlying claimants directly).

coverage under the Policies. Midvale's technical, linguistic arguments to the contrary do not persuade this Court.[87]

**B. The Settlement Payment Financially Harmed AMC.**

Both sides devoted substantial energy arguing over the issue of economic harm – whether AMC was actually financially harmed when it issued and paid stock pursuant to the Settlement Agreement.[88] Midvale contends AMC provided new stock under the Settlement Agreement, and AMC's issuance of new stock caused it no harm.[89] AMC counters that it recognized a permanent loss in its accounting because it issued new shares for the Settlement,[90] and contends that it suffered an opportunity cost in providing AMC shares for the Settlement.[91]

The "Loss" provision, and the rest of the Policies, do not condition coverage on a showing of economic harm or financial detriment. "Loss" occurs anytime AMC makes a covered payment. The preceding section, discussing why the "Loss" definition is satisfied by the Settlement, demonstrates that coverage under the Policies is invoked, regardless of AMC's economic harm.

---

[87] Midvale contends that, because of the Midvale Policy's Exhaustion and Legal Tender Clause, none of the Policies contemplate indemnification of payments made in stock. Insurers Opening at 25-26. The Court is not persuaded, as the Exhaustion and Legal Tender Clause appears in a provision regarding attachment points for excess coverage. *Id*. at Ex. 1 at MIDVALE00000539. Midvale does not argue the XL Policy is inexhausted. The Exhaustion and Legal Tender Clause does not modify the definition of "Loss" under the Policies.

[88] Insurers Opening at 27-30; AMC Opening at 21-31.

[89] Insurers Opening at 27-28.

[90] AMC Opening at 24.

[91] *Id*. at 28.

17

**C. A Genuine Issue of Material Fact Exists Regarding Consent to Settle.**

The parties provide various arguments regarding whether AMC needed to seek consent to settle the Underlying Action, whether AMC sought this consent, and whether AMC began and completed settlement negotiations without the Insurers' consent. The Court cannot resolve these issues, as there are genuine issues of material fact.[92]

The Policies provide that "[n]o Insured may…make any settlement offer with respect to, or settle any Claim without the Insurer's consent, such consent not to be unreasonably delayed or withheld."[93] AMC contends it sought the Insurers' consent, or waiver of consent, to settle the Underlying Action as soon as the first settlement offer was presented.[94] AMC explains the Insurers and AMC's counsel discussed the settlement negotiations during a March 29, 2023, conference call.[95] Midvale contends AMC never sought the Insurers' consent to settle.[96] A factual issue is presented: what was discussed on the March 29, 2023, conference call? AMC asks the Court to rely on notes taken by the call's participants, and to interpret what occurred based on these notes, but the Court declines to do so. This issue shall be resolved by a jury.

---

[92] *Capano*, 2013 WL 2724634, at *2 (citing *Ebersole*, 180 A.2d at 470).
[93] AMC Opening Ex. 1 at AMC-INS0000586.
[94] AMC Opening at 35.
[95] AMC Response at 11.
[96] Insurers Opening at 35-36; Tr. 64:12-22.

Midvale contends AMC participated in a substantive mediation on March 28, 2023, the night before the AMC received a settlement offer and the Insurers were notified about the negotiations.[97] AMC asserts that there were no substantive settlement discussion during the March 28, 2023 mediation.[98] In order to resolve this question, the Court would have to rely on deposition transcripts to make factual determinations regarding what happened at that March 28, 2023 mediation session. The Court will not do so, and instead will leave this issue for the jury to resolve.

AMC also contends the Insurers, including Midvale, never intended to cover the Settlement, so the Insurers' consent-to-settle right was waived by the Insurers' refusal.[99] In order to accept this premise, the Court would once again need to look into the mind of the Insurers based on notes and deposition transcripts. The Court declines this invitation and will leave this issue for the jury.

Delaware law enables a policyholder who fails to comply with consent requirements to still obtain coverage by rebutting the presumption that the insurer was prejudiced and showing the settlement was reasonable.[100] In the event the jury finds AMC needed to seek consent to settle the Underlying Action but failed to do so, the jury shall decide whether AMC's settlement prejudiced the Insurers. The

---

[97] Insurers Opening at 11-12.
[98] AMC Response at 10.
[99] AMC Opening at 37.
[100] *Allstate Ins. Co. v. Fie*, 2006 WL 1520088, *3 (Del. Super. Mar. 9, 2006).

19

Court will not make a determination regarding prejudice at this stage in the proceedings.

Because of genuine issues of material fact, the Court cannot resolve the issues surrounding the consent-to-settle provision. The questions regarding consent shall be presented to the jury.

## V.    CONCLUSION

AMC's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. More specifically, the Court **GRANTS** AMC's Motion as it pertains to whether the Settlement's stock payment is covered "Loss," but **DENIES** the Motion as it pertains to the Insurers' consent-to-settle defense. Midvale's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

20